FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 17, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| IRENE C.,<br><br>                    Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                    Defendant. | NO:  4:22-CV-5047-RMP<br><br>ORDER GRANTING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND REMANDING FOR<br>CALCULATION OF BENEFITS |

BEFORE THE COURT, without oral argument, are cross-motions for summary judgment from Plaintiff Irene C.[1], ECF No. 10, and Defendant the Commissioner of Social Security (the "Commissioner"), ECF No. 13.  Plaintiff seeks judicial review, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), of the Commissioner's denial of her claim for Disability Insurance Benefits ("DIB") under Title II, respectively, of the Social Security Act (the "Act").  *See* ECF No. 10 at 1.

---

[1] In the interest of protecting Plaintiff's privacy, the Court uses Plaintiff's first name and last initial.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR CALCULATION OF BENEFITS ~ 1

Having considered the parties' motions, the administrative record, and the applicable law, the Court is fully informed.  For the reasons set forth below, the Court grants Plaintiff's Motion for Summary Judgment, denies summary judgment to the Commissioner, and remands for calculation of benefits.

## BACKGROUND

### General Context

Plaintiff applied for DIB on approximately March 29, 2018, alleging an onset date on January 1, 2015.  Administrative Record ("AR")[2] 15, 173–74.  Plaintiff was 34 years old on the alleged disability onset date and asserted that she was unable to work due to bipolar manic-depressive disorder, fibromyalgia, rheumatoid arthritis, post-traumatic stress disorder, anxiety, attention deficit disorder, lumbar discogenic pain syndrome, chronic pain syndrome, and paranoia.  AR 199, 218.  Plaintiff alleged that she stopped working on January 1, 2013, because of her conditions.  AR 199.  Plaintiff's application was denied initially and upon reconsideration, and Plaintiff requested a hearing.  *See* AR 115–16.

On February 2, 2021, Plaintiff appeared for a hearing held by Administrative Law Judge ("ALJ") MaryAnn Lunderman, hosting the hearing by telephone conference from Albuquerque, New Mexico.  AR 33−36.  Plaintiff was represented

---

[2] The Administrative Record is filed at ECF No. 8.

by counsel Chad Hatfield.  AR 36.  The ALJ heard from Plaintiff's counsel,

Plaintiff, and vocational expert Leta Berkshire.  AR 36−69.  ALJ Lunderman issued

an unfavorable decision on April 13, 2021, and the Appeals Council denied review.

AR 1−6, 29.

### *ALJ's Decision*

Applying the five-step evaluation process, ALJ Lunderman found:

**Step one:** Plaintiff last met the insured status requirements of the Social

Security Act on December 31, 2019.  AR 17.  Plaintiff did not engage in substantial

gainful activity between her alleged onset day of January 1, 2015, through the date

last insured of December 31, 2019.  AR 17.

**Step two:** Plaintiff has the following severe impairments that are medically

determinable and significantly limit her ability to perform basic work activities:

inflammatory arthritis (rheumatoid arthritis seronegative); a spine disorder;

fibromyalgia; a trauma-/stressor-related disorder; a depressive/bipolar disorder; an

anxiety/obsessive compulsive disorder; and a substance addiction disorder (drugs),

pursuant to 20 C.F.R. §§ 404.1520(c).  AR 17.  The ALJ further found that "all other

medically determinable impairments established by the medical evidence, such as

gastroesophageal reflux disease and Bell's palsy[,] are not severe impairments

because the impairments caused no more than minimal functional residual

limitations.  AR 17 (citing AR 459, 478, 484, 1070).

1    **Step three:** The ALJ concluded that through the date last insured, Plaintiff did

2    not have an impairment or combination of impairments that met or medically

3    equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart

4    P, Appendix 1.  AR 18 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

5    The ALJ memorialized that Plaintiff's physical impairments did not meet, or

6    medically equal, listings 1.15 for disorders of the skeletal spine resulting in

7    compromise of a nerve root, 1.16 for lumbar spinal stenosis resulting in compromise

8    of the cauda equine, or 14.09 for inflammatory arthritis.  AR 18.  The ALJ wrote that

9    she found "these impairments did not meet these listings, even when considering the

10   listings in light of SSR 12-2p, which is use[d] when evaluating fibromyalgia."  AR

11   19.

12       With respect to Plaintiff's mental impairments, the ALJ considered listings

13   12.04 for depressive, bipolar, and related disorders; 12.06 for anxiety and obsessive-

14   compulsive disorders; or 12.15 for trauma- and stressor-related disorders.  AR 18.

15   The ALJ considered whether Plaintiff's impairments satisfy the "paragraph B"

16   criteria, requiring at least one extreme or two marked limitations in four broad areas

17   of functioning.  The ALJ found Plaintiff only moderately limited in understanding,

18   remembering, or applying information; interacting with others; concentrating,

19   persisting, or maintaining pace; and adapting or managing oneself.  AR 18–19.

20

21

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR CALCULATION OF BENEFITS ~ 4

Therefore, the ALJ found that the "paragraph B" criteria were not satisfied and further found that the "paragraph C" criteria are "not present in this case."  AR 19.

**Residual Functional Capacity ("RFC"):** The ALJ found that Plaintiff, through the date last insured, had the RFC to perform a "limited range of light work," as defined in 20 C.F.R. § 404.1567(b), with certain exceptions.  AR 19.  The ALJ further defined the RFC as follows:

> Specifically, all postural activities must have been limited to frequently except for balancing, which was unlimited, and the climbing of ladders, ropes, and scaffolds which was limited to occasionally. Within the assigned work area, there must have been less than occasional concentrated exposure to extreme cold, vibrations, and hazards, such as machinery and heights. The assigned work must have been limited to simple, unskilled tasks with a specific vocational preparation (SVP) rating of 1 or 2 and a reasoning level of 1 or 2. The assigned work must have been performed primarily independently not in tandem or as a member of a team or crew and must have required no contact with the public and no greater than brief intermittent work related  contact with coworkers and supervisors. Finally, the assigned work must have allowed as frequently as every 25 minutes, the option to sit or stand at will while remaining at the assigned workstation and on task.

AR 19 (as written in original).

In determining Plaintiff's RFC, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her alleged symptoms "are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  AR 20.

**Step four:** The ALJ found that Plaintiff was unable to perform any past relevant work through the date last insured.  AR 27 (citing 20 C.F.R. § 404.1563).

**Step five:** The ALJ found that Plaintiff has at least a high school education; was 39 years old, which is defined as a younger individual (age 18-49), on the date last insured; and that transferability of job skills is not material to the determination of disability because Plaintiff is "not disabled" under the Medical-Vocational Rules, whether or not Plaintiff has transferable job skills. AR 27 (citing 20 C.F.R. §§ 404.1569 and 404.1569(a)). The ALJ found that given Plaintiff's age, education, work experience, and RFC, Plaintiff can make a successful adjustment to other work that exists in significant numbers in the national economy. AR 27–28. Specifically, the ALJ recounted that the VE identified the following representative occupations that Plaintiff could perform with the RFC: Marker (light, unskilled, with around 130,200 jobs nationally); Electronic Accessories Assembler (light, unskilled work, with around 10,100 jobs nationally); and Bench Assembler (light, unskilled work with around 205,000 jobs nationally). AR 28. The ALJ concluded that Plaintiff had not been disabled within the meaning of the Act at any time from the alleged onset date of January 1, 2015, through the date last insured, December 31, 2019. AR 29.

## LEGAL STANDARD

### *Standard of Review*

Congress has provided a limited scope of judicial review of the Commissioner's decision. 42 U.S.C. § 405(g). A court may set aside the Commissioner's denial of benefits only if the ALJ's determination was based on

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR CALCULATION OF BENEFITS ~ 6

1  legal error or not supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d

2  993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)).  "The [Commissioner's]

3  determination that a claimant is not disabled will be upheld if the findings of fact are

4  supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir.

5  1983) (citing 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere

6  scintilla, but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112,

7  1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir.

8  1989).  Substantial evidence "means such evidence as a reasonable mind might

9  accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389,

10  401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the

11  [Commissioner] may reasonably draw from the evidence" also will be upheld.  *Mark*

12  *v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the

13  record, not just the evidence supporting the decisions of the Commissioner.

14  *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).

15      A decision supported by substantial evidence still will be set aside if the

16  proper legal standards were not applied in weighing the evidence and making a

17  decision. *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir.

18  1988).  Thus, if there is substantial evidence to support the administrative findings,

19  or if there is conflicting evidence that will support a finding of either disability or

20

21

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR CALCULATION OF BENEFITS ~ 7

nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229–30 (9th Cir. 1987).

### Definition of Disability

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work, but cannot, considering the claimant's age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

### Sequential Evaluation Process

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520. Step one determines if he is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. § 404.1520(a)(4)(i).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR CALCULATION OF BENEFITS ~ 8

1    If the claimant is not engaged in substantial gainful activities, the decision

2    maker proceeds to step two and determines whether the claimant has a medically

3    severe impairment or combination of impairments.  20 C.F.R. § 404.1520(a)(4)(ii).

4    If the claimant does not have a severe impairment or combination of impairments,

5    the disability claim is denied.

6    If the impairment is severe, the evaluation proceeds to the third step, which

7    compares the claimant's impairment with listed impairments acknowledged by the

8    Commissioner to be so severe as to preclude any gainful activity.  20 C.F.R. §

9    404.1520(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1.  If the impairment

10    meets or equals one of the listed impairments, the claimant is conclusively presumed

11    to be disabled.

12    If the impairment is not one conclusively presumed to be disabling, the

13    evaluation proceeds to the fourth step, which determines whether the impairment

14    prevents the claimant from performing work that she has performed in the past.  If

15    the claimant can perform her previous work, the claimant is not disabled.  20 C.F.R.

16    § 404.1520(a)(4)(iv).  At this step, the claimant's RFC assessment is considered.

17    If the claimant cannot perform this work, the fifth and final step in the process

18    determines whether the claimant is able to perform other work in the national

19    economy considering her residual functional capacity and age, education, and past

20

21

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR CALCULATION OF BENEFITS ~ 9

work experience.  20 C.F.R. § 404.1520(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once the claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation.  *Meanel*, 172 F.3d at 1113.  The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which the claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ISSUES ON APPEAL

The parties' motions raise the following issues regarding the ALJ's decision:

1.    Did the ALJ err by denying reopening of Plaintiff's prior application?

2.    Did the ALJ err at step three in determining that Plaintiff does not meet or equal a listing?

3.    Did the ALJ erroneously evaluate the medical opinion evidence?

4.    Did the ALJ erroneously reject Plaintiff's subjective complaints?

5.    Did the ALJ err at step five by failing to conduct an adequate analysis?

/ / /

/ / /

/ / /

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR CALCULATION OF BENEFITS ~ 10

1    ***Reopening Prior Application***

2        Plaintiff argues that the ALJ should have reopened Plaintiff's prior claim,

3    filed in December 2016 and denied in April 2017, as Plaintiff requested at the 2021

4    hearing.  ECF No. 10 at 9 (citing AR 43, 72).  Plaintiff submits that the ALJ should

5    have made findings about Plaintiff's request and should have reopened the prior

6    claim because there was a disabling opinion from psychiatrist Kirsten Nestler, MD

7    in the interim, on March 11, 2017. *Id.* at 9–10.  Plaintiff adds, "This would arguable

8    [sic] result in the need to reevaluate the medical opinions under the prior

9    regulations."  *Id.* at 10.

10        The Commissioner responds that refusals to reopen prior applications do not

11    constitute reviewable, final decisions.  ECF No. 13 at 2 (citing *Panages v. Bowen*,

12    871 F.2d 91, 93–94 (1989); *Califano v. Sanders*, 430 U.S. 99, 107–09 (1977)).  The

13    Commissioner submits that it is not significant that the ALJ did not "*expressly*

14    decline to reopen [Plaintiff's] prior application" where the ALJ's discretionary

15    decision is "not reviewable in the first instance."  ECF No. 13 at 2–3.

16        Plaintiff filed an application for DIB and Social Security insurance in

17    December 2016, and did not appeal its denial on April 5, 2017.  AR 90.  At the

18    hearing on February 2, 2021, Plaintiff's counsel requested that the ALJ reopen

19    Plaintiff's prior application, asserting that Plaintiff "just didn't understand the

20    process without an attorney" and that Plaintiff's "pain complaint became more

21

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR CALCULATION OF BENEFITS ~ 11

developed and made a record." AR 43. The ALJ took the matter under

consideration and did not discuss reopening the application in her April 13, 2021

decision.

An ALJ's refusal to reopen an earlier decision is "strictly discretionary, not

final, and thus not generally reviewable by a district court." *Smith v. Berryhill*, Case

No. 17-cv-647-RAJ, 2018 U.S. Dist. LEXIS 27088 at *7 (W.D. Wash. Feb. 20,

2018) (citing *Dexter v. Colvin*, 731 F.3d 977, 980 (9th Cir. 2013)). However,

judicial review is available to plaintiffs who raise a colorable constitutional claim

regarding the decision not to reopen. *Califano*, 430 U.S. at 108–09. Plaintiff makes

no argument about any constitutional violation and does not present any other basis

on which a decision about reopening a prior claim is reviewable. Therefore, the

Court finds no basis to reverse or remand based on this issue.

### *Medical Opinions*

Plaintiff argues that the ALJ erroneously evaluated medical source opinions

from: (1) examining psychiatrist Kirsten Nestler, MD; (2) examining psychologist

K. Mansfield-Blair, PhD; (3) treating nurse practitioner Angela Combs, ARNP; (4)

treating nurse practitioner Matthew Palmblad, ARNP; and (5) treating nurse

practitioner Diane Hanks, FNP. ECF No. 10 at 10–17.

Defendant responds that the ALJ reasonably evaluated the relevant opinions

according to the appropriate framework. ECF No. 13 at 8–15.

1    The regulations that took effect on March 27, 2017, provide a new framework

2    for the ALJ's consideration of medical opinion evidence and require the ALJ to

3    articulate how persuasive she finds all medical opinions in the record, without any

4    hierarchy of weight afforded to different medical sources. *See* Rules Regarding the

5    Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18,

6    2017).  Instead, for each source of a medical opinion, the ALJ must consider several

7    factors, including supportability, consistency, the source's relationship with the

8    claimant, any specialization of the source, and other factors such as the source's

9    familiarity with other evidence in the claim or an understanding of Social Security's

10   disability program.  20 C.F.R. § 404.1520c(c)(1)-(5).

11    Supportability and consistency are the "most important" factors, and the ALJ

12   must articulate how she considered those factors in determining the persuasiveness

13   of each medical opinion or prior administrative medical finding.  20 C.F.R. §

14   404.1520c(b)(2).  With respect to these two factors, the regulations provide that an

15   opinion is more persuasive in relation to how "relevant the objective medical

16   evidence and supporting explanations presented" and how "consistent" with

17   evidence from other sources the medical opinion is.  20 C.F.R. § 404.1520c(c)(1).

18   The ALJ may explain how she considered the other factors, but is not required to do

19   so, except in cases where two or more opinions are equally well-supported and

20   consistent with the record.  20 C.F.R. § 404.1520c(b)(2), (3).  Courts also must

21

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR CALCULATION OF BENEFITS ~ 13

1   continue to consider whether the ALJ's finding is supported by substantial evidence.

2   *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to

3   any fact, if supported by substantial evidence, shall be conclusive . . . .").

4       Prior to revision of the regulations, the Ninth Circuit required an ALJ to

5   provide clear and convincing reasons to reject an uncontradicted treating or

6   examining physician's opinion and provide specific and legitimate reasons where the

7   record contains a contradictory opinion.  *See Revels v. Berryhill*, 874 F.3d 648, 654

8   (9th Cir. 2017).  However, the Ninth Circuit has held that the Social Security

9   regulations revised in March 2017 are "clearly irreconcilable with [past Ninth

10  Circuit] caselaw according special deference to the opinions of treating and

11  examining physicians on account of their relationship with the claimant."  *Woods v.*

12  *Kijakazi*, No. 21-35458, 2022 U.S. App. LEXIS 10977, at *14 (9th Cir. Apr. 22,

13  2022).  The Ninth Circuit continued that the "requirement that ALJs provide

14  'specific and legitimate reasons' for rejecting a treating or examining doctor's

15  opinion, which stems from the special weight given to such opinions, is likewise

16  incompatible with the revised regulations."  *Id*. at *15 (internal citation omitted).

17      Accordingly, as Plaintiff's claim was filed after the new regulations took

18  effect, the Court refers to the standard and considerations set forth by the revised

19  rules for evaluating medical evidence.  *See* AR 173–74.

20  / / /

21

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR CALCULATION OF BENEFITS ~ 14

**<u>Drs. Nestler and Mansfield-Blair</u>**

Plaintiff argues that the ALJ did not properly evaluate the supportability or consistency of the mental health physicians' professional findings.  ECF No. 10 at 11–12.  Plaintiff submits that the ALJ "is unable to identify any activities that are inconsistent" with the limitations that the physicians assessed.  *Id.* at 11.  Rather, Plaintiff argues, the longitudinal record documents "consistently severe mental health symptomology" and Plaintiff's inability to stabilize her mood, despite numerous medication trials.  *Id.* at 11–12.  Plaintiff asserts that the ALJ merely substituted her lay judgment for the "well-supported and consistently disabling opinions of Dr. Nestler and Dr. Mansfield-Blair, who completed independent comprehensive assessments two years apart."  *Id.* at 12.

The Commissioner responds that the ALJ reasonably found that Plaintiff's reports of doing all of the cooking for her family, leaving her home daily, and preparing her children breakfast and taking them to school was inconsistent with the examining physicians' opinions that Plaintiff would have difficulty performing activities and maintaining attendance on a consistent basis or deal with usual stress.  ECF No. 13 at 9–10 (citing AR 338, 1038).  The Commissioner acknowledges that Plaintiff's longitudinal record shows mood instability but counters that the record also reflects "frequently normal attention, concentration, judgment, insight, cognition, and behavior."  ECF No. 13 at 10 (with no citation).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR CALCULATION OF BENEFITS ~ 15

Plaintiff replies that the records cited by the Commissioner demonstrate that Plaintiff prepares just one meal per day, engages in minimal self-care, such as showering only once or twice per week, receives help from her children with chores, and relies on her daughter or her husband to drive her places. ECF No. 14 at 4 (citing AR 338, 1038). Plaintiff also submits that the only citations or reasoning offered by Defendant to support the ALJ's decision is in the form of Plaintiff's "waxing and waning mental health symptoms and the fact that the claimant is a parent." *Id.* at 3.

Dr. Nestler examined Plaintiff on March 11, 2017, and opined that Plaintiff can manage her own finances and can perform simple, repetitive tasks as well as detailed, complex tasks. AR 337, 340. However, Dr. Nestler found that, due to Plaintiff's multiple chronic mental health disorders, Plaintiff would have difficulty: accepting instructions from supervisors and interacting with coworkers; performing work activities on a consistent basis without special or additional instructions; maintaining regular attendance in the workplace; completing a normal workday/workweek without interruptions; and dealing with the usual stress encountered in the workplace. AR 341.

Dr. Mansfield-Blair examined Plaintiff on April 27, 2019, and found that Plaintiff would have difficulty with the same activities as those recited by Dr.

Nestler except that Dr. Mansfield also found that Plaintiff would have difficulty performing detailed and complex tasks.  AR 1036–41.

ALJ Lunderman found Dr. Nestler's and Dr. Mansfield-Blair's opinions "unpersuasive."  ALJ Lunderman acknowledged that the examiners' opinions are "somewhat supported by contemporaneous objective findings."  AR 24–25. However, the ALJ found the examiners' opinions inconsistent with Plaintiff's ability to engage in a variety of activities, as reported to Dr. Nestler in 2017, and with the "record as a whole, which establishes improvement when compliant with medication . . . ."  AR 24–25 (citing AR 328, 333, 338, 349, 374, 383, 447, 449, 455, 465, 471, 479, 493, 976, 989, 1012, 1024, 1099, 1176, 1188, 1223).

Reviewing the documents cited by the ALJ, the Court does not find that the record plainly documents improvement with medication, and, instead, indicates that Plaintiff had, at the least, waxing and waning mental health symptoms.  The record also supports that Plaintiff experienced persistent mental health symptoms even while providers were overseeing her medication regimen.  The ALJ was correct that the medical records indicate that Plaintiff presented at pain treatment appointments with intact memory and good insight and judgment.  AR 328, 333, 349, 1176, 1188, 1223.  However, in 2017, a primary care treatment note cited by the ALJ recounts normal mental status examination findings alongside a finding that Plaintiff had a euthymic mood and a mood-congruent affect, and the provider recommended that

Plaintiff continue on her current medications.  AR 492–93.  Appointment notes from a September 2018 psychiatric diagnostic evaluation indicate that Plaintiff's mental status exam found that Plaintiff had an anxious mood even while her other mental status findings were unremarkable.  AR 374.  Plaintiff was "[o]n bipolar medications" but reported "[c]ontinued ups and downs, more downs."  AR 371.  A treatment note from two weeks later, in October 2018, indicates that Plaintiff reported "feeling fine" and doing "much better," and reported that a medication she had recently been prescribed improved her sleep and anxiety.  AR 383 (also reporting that she had not noticed a decrease in her depressive symptoms with the medication she was prescribed).  Other treatment notes from providers seeing Plaintiff for physical complaints in 2018 observe that Plaintiff presented with a normal mood and affect and that her judgment, thought content, and memory were normal.  AR 455, 465, 471, 479.  An October 2019 appointment note indicated that Plaintiff would be continued on her current medication regimen and that Plaintiff reported "doing well," but also shared that "she does suffer from decreased mood and anxiety during the colder months of the year."  AR 1099–1100.  Again, the material cited by the ALJ does not comport with the ALJ's reasoning that Plaintiff improved when compliant with medication or that Plaintiff's impairments were effectively controlled by medication to a level at which she could sustain competitive employment.  Rather Plaintiff's mental health treatment records indicate

that Plaintiff continued to present with an anxious or depressed mood, even while taking medications.  *See* AR 371, 374.

With respect to the daily activities that Plaintiff reported to Dr. Nestler, the report indicates that Plaintiff "does all of the cooking for the household," goes grocery shopping approximately twice per week, and "drops off the kids at school then she goes back to her room, watches television until her children get out of school."  AR 338.  Dr. Nestler further recorded that Plaintiff can do "minimal self-care" and "showers perhaps once or twice a week" and receives help from her children with chores around the house.  AR 338.  Plaintiff reported that her husband or daughter drives her where she needs to go.  AR 1038.  The ALJ does not specify how Dr. Nestler's or Dr. Mansfield-Blair's opinions are inconsistent with the activities or level of activity that Plaintiff reported, and the activities were not inherently inconsistent with disability.  *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (holding that a claimant's ability to complete "some basic chores and occasionally socialize[]" was a insufficient reason to discount a medical source's opinion where a "holistic review of the record" showed the claimant "relied heavily on his caretaker, struggled with social interactions, and limited himself to low-stress environments.").

1    As neither of the reasons that the ALJ provided for discounting Dr. Nestler's

2    and Dr. Mansfield-Blair's opinions was supported by substantial evidence, the Court

3    finds that the ALJ erred in her treatment of these medical source opinions.

4    **ARNP Combs**

5    Plaintiff maintains that the ALJ improperly rejected Plaintiff's treating

6    provider's opinion for infringing on an issue reserved to the Commissioner, whether

7    Plaintiff meets or equals a listing. ECF No. 10 at 13–14. Plaintiff asserts that

8    ARNP Combs "did not just state she meets a listing but provided an opinion on the

9    severity of the "B" criteria and the "C" criteria," and "such opinions cannot be

10    simply disregarded." *Id.* Plaintiff further argues that the ALJ erred in rejecting

11    ARNP Combs's opinion as inconsistent with the longitudinal record "without

12    providing any details or explanation, and then simply rejected it based on

13    [Plaintiff's] alleged marijuana use." *Id.* at 14 (citing AR 26).

14    The Commissioner responds that the ALJ legitimately found that a statement

15    about whether a claimant's impairments meet or medically equal a Listing is

16    reserved to the Commissioner. ECF No. 13 at 11 (citing AR 26; 20 C.F.R. §

17    404.1520b(c)(3)(iv)). The Commissioner further argues that the ALJ cited to

18    evidence to discount ARNP Comb's opinion, including that Plaintiff has presented

19    with "normal thought process, perception, and content, and with normal insight,

20    cognition, and judgment." ECF No. 13 at 11–12 (citing AR 26, 374, 379–80).

21

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR CALCULATION OF BENEFITS ~ 20

ARNP Combs completed a medical source form on January 10, 2021.  AR

1273–76.  ARNP Combs indicated the following opinions on the form: (1) Plaintiff

is markedly limited in the ability to complete a normal workday and workweek

without interruptions from psychologically based symptoms and to perform at a

consistent pace without an unreasonable number and length of rest periods; in her

ability to get along with coworkers or peers without distracting them or exhibiting

behavioral extremes; and in the ability to respond appropriately to changes in the

work setting; (2) Plaintiff is severely limited in the ability to travel in unfamiliar

places or use public transportation; (3) Plaintiff suffers marked limitation in the "B"

criteria of concentrating, persisting, or maintaining pace and meets the "C" criteria,

as even a minimal increase in mental demands or change in the environment likely

would cause her to decompensate; (4) Plaintiff would be off task and unproductive

over thirty percent of a forty-hour week; (5) Plaintiff would miss four or more days

of work per month; (6) her mood instability and anxiety often limit her ability to

sustain attention and attend work obligations; and (7) despite medication trials, her

moods continue to fluctuate and cannot be considered stable.  AR 1273–76.  ARNP

Combs further commented: "Although [Plaintiff] is highly capable and intelligent[,]

her mood instability and anxiety often limits her ability to sustain attention and

attend to work obligations. Despite multiple medication trials, her moods continue to

1  fluctuate and cannot be considered stable. Until new treatment options are available

2  it is not likely that stability will occur."  AR 1276.

3      The ALJ found ARNP Combs's determination that there was listing-level

4  criteria "inherently neither valuable nor persuasive," as this is an issue that is

5  reserved to the Commissioner.  AR 26.  The ALJ further found the remainder of

6  ARNP Combs's opinion "unpersuasive."  AR 26.  The ALJ acknowledged that the

7  opinion was "supported with reference to fluctuating mood, which she noted could

8  not be considered stable despite use of medication."  AR 26.  However, the ALJ

9  reasoned that ARNP Combs's opinion was inconsistent with "evidence establishing

10  the cited degree of abnormal objective findings did not persist across the

11  longitudinal period at issue" and evidence that Plaintiff's symptoms "when more

12  compliant with use of medication the symptoms were not as severe as assessed by

13  Ms. Combs."  AR 26.

14      The Court does not find error in the ALJ's determination that ARNP Combs's

15  opinion about listing-level criteria lacks value and is not persuasive.  *See* 20 C.F.R. §

16  404.1527(d) (noting that the ultimate issue of disability is reserved for the

17  Commissioner, and opinions on that issue are not considered medical opinions nor

18  are they given any special significance).   However, this reasoning does not support

19  the ALJ's rejection of the remainder of ARNP Combs's opinion. *See William D. v.*

20

21

1    *Berryhill*, No. 6:18-cv-38-SI, 2019 U.S. Dist. LEXIS 72311, at *37 (D. Or. Apr. 30,

2    2019) (citing *Ghanim*, 763 F.3d at 1161).

3          The exhibits cited by the ALJ in support of her reasoning that Plaintiff's

4    symptoms were not as severe as found by ARNP Combs when "more compliant"

5    with medication or across the longitudinal record does not amount to substantial

6    evidence directly supporting these conclusions.  The ALJ's citations for this

7    reasoning mirror the citations that Court reviewed above, and the Court does not find

8    evidence indicating that Plaintiff was more or less compliant at certain points in the

9    longitudinal record than others.  *See* AR 328, 333, 338, 349, 374, 383, 447, 449,

10   455, 465, 471, 479, 493, 976, 989, 1012, 1024, 1099, 1176, 1188, 1223.  Plaintiff

11   also continued to present with significant mental health symptoms even when she

12   was reporting improvement following modifications to her medication regimen.  *See*

13   AR 371, 374, 383, 492–93.  Moreover, a connection between Plaintiff's marijuana

14   use and the supportability or consistency of ARNP Combs's opinion is not clear on

15   the face of the ALJ's decision.

16         Finding that the ALJ did not provide germane reasons, nor reasons supported

17   by substantial evidence, for discounting ARNP Combs's opinion, the ALJ's

18   treatment of this medical source opinion also amounts to reversible error.

19   / / /

20   / / /

21

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR CALCULATION OF BENEFITS ~ 23

**ARNP Palmblad**

Plaintiff argues that the ALJ erred in rejecting ARNP Palmblad's opinion simply because he did not begin treating Plaintiff until after the date last insured, without evaluating the supportability or consistency of the opinion. ECF No. 19 at 16 (citing AR 23).

The Commissioner responds that the ALJ's reasoning for rejecting ARNP Palmblad's opinion "has support in Ninth Circuit law." ECF No. 13 at 13 (citing *Lair-Del Rio v. Astrue*, 380 F.App'x 694, 695 (9th Cir. 2010) (finding ALJ justified in rejecting medical opinion evidence postdating the date last insured)). The Commissioner further argues that, even if the ALJ's analysis were erroneous, the error is harmless because the same reasons that the ALJ gave for rejecting similar evidence, such as Plaintiff's daily activities and improvement of Plaintiff's symptoms with treatment, is relevant to discounting ARNP Palmblad's opinion.

ARNP Palmblad completed a Medical Report form for Plaintiff on January 5, 2021, on which he indicated that he first treated Plaintiff on March 10, 2020. AR 1270–72. ARNP Palmblad reviewed Plaintiff's physical and mental health conditions and medical history and opined that due to depression, anxiety, bipolar disorder, PTSD, fibromyalgia, and rheumatoid arthritis, Plaintiff: must lie down during the day due to chronic back pain and the need to use a spinal cord stimulator; experiences daytime fatigue and sleepiness from her mental health medications;

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR CALCULATION OF BENEFITS ~ 24

experienced a deterioration in her mental and physical health when she previously

worked full-time in 2014; would miss four or more days of work per month; is

severely limited and unable to meet the demands of even sedentary work; is

restricted to frequent use of her upper extremities; and would be off task and

unproductive over thirty percent of a forty-hour workweek.  AR 1270–72.  ARNP

Palmblad opined that Plaintiff's limitations have existed since at least December 31,

2019.  AR 1270–72.

The ALJ found ARNP Palmblad's opinion unpersuasive "because the

statement is not relevant to the period at issue, which is from the alleged onset date

of January 1, 2015 [sic] through the date last insured of December 31, 2019."  AR

23.

Given that ARNP Palmblad opined that Plaintiff's limitations had existed

since at least December 2019, within the relevant period, the Court finds that the

opinion being issued outside of the relevant period is not a sufficient reason for

rejecting it.  *See* AR 23, 1272.  Furthermore, the Court has already determined that

the reasoning provided by the ALJ in discounting similar opinion evidence was

marred by harmful error.  Therefore, the Court finds that the ALJ erred in her

evaluation of ARNP Palmblad's opinion.

/ / /

/ / /

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR CALCULATION OF BENEFITS ~ 25

**<u>FNP Hanks</u>**

Plaintiff argues that the ALJ erroneously rejected FNP Hanks's opinion on "boilerplate findings" without assessing the consistency or supportability of FNP Hanks's disabling findings.  ECF No. 10 at 17.

The Commissioner responds that the ALJ reasonably discounted FNP Hanks's opinion on the basis that it was on an issue reserved to the commissioner, namely whether Plaintiff can perform regular or continuing work.  ECF No. 13 at 14–15.

FNP Hanks opined on a check-box form on January 5, 2017, that Plaintiff cannot perform any type of work on a reasonably continuous, sustained basis due to her rheumatoid arthritis, PTSD, bipolar disorder, and anxiety.  AR 1268.

The ALJ found FNP Hanks's opinion "neither valuable nor persuasive," as the ultimate issue of disability is reserved to the Commissioner.  AR 23.

FNP Hanks's sole opinion on the January 5, 2017 form addresses the ultimate issue of whether Plaintiff can work and does not offer insight into any specific limitation.  Consequently, FNP Hanks did not provide a medical source opinion.  *See* 20 C.F.R. § 404.1527(d) (noting that the ultimate issue of disability is reserved for the Commissioner, and opinions on that issue are not considered medical opinions, nor are they given any special significance).  The Court does not find error in the ALJ's evaluation of FNP Hanks's opinion.

Having found that the ALJ erred in her treatment of four medical source opinions, the Court grants summary judgment to Plaintiff on this issue and denies summary judgment to the Commissioner on the same.

### Subjective Symptom Testimony

Plaintiff argues that the ALJ did not provide the requisite clear and convincing reasons for making a negative credibility determination and instead offered "little more than vague assertions that the claimant's allegations are unsupported by the objective medical evidence of record, contrary to law." ECF No. 10 at 18–19 (citing *Robbins v. Commissioner*, 466 F.3d 880 (9th Cir. 2006)). Plaintiff asserts that the ALJ does not cite any records to support her allegation that Plaintiff has not been compliant with treatment, nor does she offer any explanation for how Plaintiff was allegedly noncompliant. *Id.* at 19 (citing AR 21, 50, wherein the ALJ noted that Plaintiff testified to stretching). Plaintiff further argues that the ALJ erroneously rejected Plaintiff's symptom complaints based on evidence of waxing and waning symptoms. *Id.* at 20 (citing *Garrison v. Colvin*, 759 F.3d 995, 1017–18 (9th Cir. 2014); *Attmore v. Colvin*, 827 F.3d 872, 878 (9th Cir. 2016)).

The Commissioner responds that the ALJ provided clear and convincing reasons, supported by substantial evidence, for her assessment of Plaintiff's subjective complaints. ECF No. 13 at 3. The Commissioner asserts that the ALJ acknowledged that Plaintiff is limited by her impairments in formulating a "quite

1    restrictive RFC." *Id.* at 4.  With respect to the subjective symptom complaints that

2    the ALJ did not accept "at face value," the Commissioner argues that Plaintiff's

3    testimony that she has no friends is inconsistent with her use of Facebook to

4    communicate with friends and family. *Id.* at 4 (citing AR 49, 271).  The

5    Commissioner maintains that Plaintiff's reports of "making breakfast for her

6    children and dropping them off at school, gardening in the summer, grocery

7    shopping twice a week, and doing 'all the cooking for the household'" reasonably

8    undermine Plaintiff's testimony that she "could not do housework, cooked very little

9    because she was forgetful, was bedbound or housebound up to a third of the month,

10   and could sit for only limited periods." *Id.* at 5.  The Commissioner also asserts that

11   Plaintiff's report of driving to Texas in 2018 contradicts her alleged sitting

12   limitations. *Id.* at 5–6 (citing AR 21, 470, 472).  The Commissioner continues that,

13   in addition to relying on substantial evidence with respect to Plaintiff's regular

14   activities, the ALJ reasonably relied on evidence showing that Plaintiff's course of

15   treatment improved her symptoms. *Id.* at 6 (citing AR 21).

16           Plaintiff replies that the ALJ erred by acknowledging the record evidence of

17   "'consistent findings of psychomotor agitation, restlessness, anxious, dysphoric

18   mood, congruent affect, and difficulty with attention and concentration'" while

19   apparently "dismiss[ing] these longitudinal findings for a single episode showing

20   alleged improvement in symptomology in October 2019."  ECF No. 14 at 11

21

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR CALCULATION OF BENEFITS ~ 28

(quoting AR 22).  Plaintiff also contends that Plaintiff's activities of daily living were an inadequate basis on which to discount her testimony.  ECF No. 14 at 11–12 (citing *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) ("[T]he mere fact that she cares for small children does not constitute an adequately specific conflict with her reported limitations.")).

In deciding whether to accept a claimant's subjective pain or symptom testimony, an ALJ must perform a two-step analysis.  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  First, the ALJ must evaluate "whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  Second, if the first test is met and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."  *Smolen*, 80 F.3d at 1281.

The ALJ noted the following testimony from Plaintiff:

> The claimant testified she was "snapping" at others when she was working. She attributed this to irritability due to her physical impairments, which caused increased joint, muscle, and back pain, which persisted despite compliance with prescribed medication. The claimant testified pain limits her residual ability to lift to less than 10 pounds, sitting to 30 to 45 minutes, standing to 45 minutes, and walking to no more than a couple of blocks. She also testified pain limits the ability to do housework and while she tries to help, her husband and

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR CALCULATION OF BENEFITS ~ 29

children do most of the housework.  The claimant's husband does the laundry and she cooks but very little because her ability to cook is limited to small meals because she gets distracted.

The claimant testified pain medication causes side effects, including being tired all the time which is in addition to fatigue she experiences during flares due to inflammatory arthritis, which occur once or twice a month or flares due to fibromyalgia, which occur once or twice a week. She testified when having flares due to inflammatory arthritis or fibromyalgia, she is less functional and experiences "fibro fog." Even when not having a flare, the claimant testified she must lay down three to four times a day. She reports her pain triggers her underlying mental symptoms and this results in being irritable toward her family and she report [sic] she sometimes "snaps" at them. She testified she has to have someone with her when she leaves the house. She also testified that two to three times a month and sometimes for more than one day at a time, she does not want to leave the house due to symptoms of depression and anxiety.

AR 20.  The ALJ found that Plaintiff's testimony about the severity of her impairments is undermined by evidence of her "issues with treatment compliance," both with respect to Plaintiff's physical symptoms and her mental health impairments.  AR 21–22.  For Plaintiff's mental health symptoms, the ALJ found that "medical evidence of record . . . reflects noncompliant [sic] with follow up [sic] appointments and use of medications prescribed for mental symptoms throughout the longitudinal period at issue."  AR 22.  However, the ALJ does not cite anything for that proposition.  The ALJ contrasts Plaintiff's mostly abnormal mental status examinations from May 2015 through September 2018 with "more recent" evidence that, according to the ALJ, shows that Plaintiff's medications are effective in treating her mental health symptoms when Plaintiff is compliant with her regimen.  AR 22.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR CALCULATION OF BENEFITS ~ 30

In support, the ALJ cited the same records examined above, with respect to the medical source opinions.  *See* AR 328, 333, 338, 349, 374, 383, 447, 449, 455, 465, 471, 479, 493, 976, 989, 1012, 1024, 1099, 1176, 1188, 1223.  The Court already found that this evidence does not clearly show noncompliance and shows both waxing and waning symptoms and persistent symptoms throughout the relevant period.

As to Plaintiff's daily activities, the ALJ again relies on Plaintiff's reported ability to care for her own hygiene, make breakfast for her children and drop them off at school, spend time watching television, occasionally garden in the summer, shop for groceries approximately twice per week, and do the cooking for the household to partially discredit Plaintiff's testimony about her mental and physical limitations.  AR 22–23 (citing AR 338, 1038).

It is well established that "the Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  "Only if [her] level of activity were inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [her] credibility."  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citations omitted).

Here, the ALJ did not explain how any of the activities of daily living that the ALJ noted demonstrate that Plaintiff can sustain competitive employment on a full-time basis.  *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.").  The Court finds nothing in Plaintiff's descriptions of her daily activities to be inconsistent with her subjective symptom complaints.  Nor do the activities highlighted by the ALJ naturally translate to an ability to perform competitive work on a sustained basis.

The ALJ did not provide clear and convincing reasons supported by substantial evidence in partially rejecting Plaintiff's subjective symptom testimony.  Accordingly, the Court grants summary judgment to Plaintiff on this ground and denies summary judgment to the Commissioner on the same.

Having found harmful error in the ALJ's assessment of medical source opinions and Plaintiff's subjective symptom testimony, the Court need not resolve the remaining allegations of error.

### Type of Remand

Lastly, Plaintiff asks the Court to remand her claim for a benefits award.  ECF No. 10 at 17.  The Court may remand a case "either for additional evidence and

findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). When the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Nonetheless, the Ninth Circuit has endorsed an award for benefits where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d at 1292.

In this case, the Court has determined that the ALJ committed harmful error in her evaluation of medical source opinions and Plaintiff's subjective symptom testimony. Were the rejected evidence credited, the ALJ would be required to find Plaintiff disabled. The Commissioner has not presented any outstanding issues that must be resolved. *See* ECF No. 13. Therefore, a remand for calculation of benefits is warranted.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes that the ALJ did not provide legally sufficient reasons for discounting the medical source opinions and Plaintiff's subjective complaints. In addition, the Court finds that

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR CALCULATION OF BENEFITS ~ 33

further administrative proceedings have not been shown to be necessary.

Accordingly, **IT IS HEREBY ORDERED** that:

1.  Plaintiff's Motion for Summary Judgment, **ECF No. 10**, is **GRANTED**.

2.  Defendant's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

3.  The matter is **REMANDED** to the Commissioner for calculation of benefits.

4.  Judgment shall be entered for Plaintiff.

   **IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order, enter judgment as directed, provide copies to counsel, and **close the file** in this case.

   **DATED** February 17, 2023.


                              *s/ Rosanna Malouf Peterson*
                           ROSANNA MALOUF PETERSON
                           Senior United States District Judge